UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN AUTOMOBILE
ASSOCIATION, INC.,

    Plaintiff,

vs.

ADVANCED AMERICAN AUTO
WARRANTY SERVICES, INC.,

    Defendant.
_____/

Civil Action No.
09-CV-12351

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER
(1) DISMISSING COUNT V OF THE COMPLAINT,
(2) DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), and
(3) DENYING PLAINTIFF'S REQUEST FOR AN ORDER UNDER FED. R. CIV. P. 11(c)(3)**

**I. INTRODUCTION**

    This is a trademark infringement case.  Plaintiff American Automobile Association, Inc. ("AAA" or "Plaintiff") claims that Defendant Advanced American Auto Warranty Services, Inc. ("Defendant") knowingly and willfully infringed on its trademarks in a manner that has caused consumers to falsely believe that Plaintiff is affiliated with Defendant or has endorsed Defendant's products and services.

    Plaintiff is a not-for-profit corporation providing over 50 million members throughout the United States, including Michigan, with products and services such as insurance and warranty coverage, travel, vacation, and automobile products and services, financial advice, and discounts.

1

Defendant is a corporation that advertises and sells automobile-related roadside assistance and warranty products and services.

The Complaint, which was filed on June 17, 2009, contains six counts as follows:

| | |
|---|---|
| Count I: | Federal Trademark Infringement, 15 U.S.C. § 1114 |
| Count II: | Federal Trademark Infringement and Unfair Competition,15 U.S.C. § 1125(a) |
| Count III: | Federal Trademark Dilution, 15 U.S.C. § 1125(c) |
| Count IV: | Federal Trademark Cyberpiracy, 15 U.S.C. § 1125(d) |
| Count V: | Trademark Infringement, Mich. Comp. Laws § 429.42 |
| Count VI: | Unfair Competition, Mich. Comp. Laws § 445.901 |

In its response to Defendant's Motion to Dismiss, Plaintiff states that it will not pursue Count V. *See* Pl.'s Resp. at 1 n.1. Plaintiff also stated at oral argument that it was withdrawing this claim. Therefore, the Court will summarily dismiss Count V.

Now before the Court is Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [docket entry 14]. Plaintiff filed a response and Defendant filed a reply. The Court heard oral argument on November 5, 2009. In its response brief, Plaintiff argues that the filing of Defendant's motion violates Fed. R. Civ. P. 11(b) and asks the Court to issue an order pursuant to Rule 11(c)(3) requiring Defendant to show cause why it has not violated Rule 11.[1] For the reasons that follow, the Court will deny Defendant's Motion to Dismiss but decline to issue an order under Rule 11(c)(3).

## II. BACKGROUND

Plaintiff has registered more than 70 trademarks with the United States Patent and Trademark Office. Compl. at ¶ 18. This case arises out of Defendant's alleged infringement of certain of these trademarks. Specifically, the trademarks that are "particularly relevant to this action" include those

---

[1] Plaintiff's Rule 11 argument is addressed in Section V of this Opinion and Order.

eight that are listed in the chart contained in paragraph 18 of the Complaint. *See id.* Plaintiff has used these marks "in interstate commerce to identify a wide range of products and services for decades." *Id.* at ¶ 15. Moreover, as stated in the Complaint,

> [o]nly AAA member clubs and those entities that are part of AAA's network of approved service providers are authorized to use or display the AAA Marks. AAA has been selective in authorizing entities to use the AAA Marks in connection with their own products and services. Consequently, AAA members and the public know that any business or website that displays the AAA Marks has been granted permission to do so only because the business maintains an excellent reputation for quality, integrity, reliability, and service.
>
> 16.   As a result of AAA's history and experience providing high quality products and services through the AAA local clubs, and as a result of the continuous and extensive advertising, promotion, and sale of products and services under the AAA Marks, those trademarks have acquired substantial value and fame in the United States and in other countries.
>
> 17.   Further, the AAA Marks are widely recognized by consumers in this country and abroad and have acquired enormous goodwill as trademarks identifying high quality and reliable products and services. Indeed, the AAA Marks are distinctive such that consumers recognize that goods and services marketed under the AAA Marks originate, or are approved or endorsed by, AAA and the AAA local clubs.

*Id.* at ¶¶ 15-17.

Defendant advertises and sells its products and services under, among others, the marks "AAA Warranty Services, Inc.," "A.A.A. Warranty Service, Inc.," "AAA Warranty Service," "AAA Warranty," and "AAA Advanced American Auto & Leasing." *Id.* at ¶ 7. Additionally, Defendant, at one time, has used the following domain names: AAA-WARRANTY.COM, AAAWARRANTY.NET, AAAWARRANTYBYNET.COM, THEAAAWARRANTY.COM, THEAAA-WARRANTY.COM, AAA-WARRANTIES.COM, WARRANTYAAA.COM, WARRANTY-AAA.COM, AAA-WS.COM, AAA-GCC.COM, and AAA-ASIA.COM. *Id.* at ¶¶

1, 22, 25-26. Defendant apparently continues to use some of these domain names while others are no longer in use. *See id.* at ¶ 28.

According to Plaintiff, it never authorized Defendant to use its trademarks and Defendant's use of the above-listed marks and domain names is "confusingly similar to AAA's famous and distinctive marks." *Id*. at ¶¶ 2, 20. As stated in the Complaint,

> 22. In or around February 2008, AAA began receiving reports from consumers confused by a company named "AAA Warranty" selling automobile warranties. Immediately upon learning of these reports, AAA investigated the matter and contacted Defendant regarding its use of the infringing business name and unlawful registration and use of the domain name AAA-WARRANTY.COM.
>
> 23. On or about March 5, 2008, AAA sent Defendant a letter to Defendant's business address, requesting that Defendant cease use of the AAA Marks in connection with its business and that it cancel its registration for the domain name AAA-WARRANTY.COM.
>
> 24. Defendant's counsel responded in a letter dated April 1, 2008, denying that Defendant had infringed AAA's Marks or that the website had been registered in bad faith. Thereafter, the two parties entered into extensive and detailed negotiations in an attempt to reach an amicable resolution of the matter. Despite these extensive efforts over a period of months, Defendant ultimately declined to settle and refused to cease the Infringing Uses.

*Id*. at ¶¶ 22-24. Moreover,

> 29. Despite having been notified repeatedly that its continued, unauthorized Infringing Uses constitute actionable trademark infringement, trademark dilution, cyberpiracy, and unfair competition, Defendant persists in its unlawful use of the AAA Marks, both in actively advertising its business and through using and registering the Infringing Domain Names.
>
> 30. On information and belief, Defendant's Infringing Uses have been and continue to be of commercial value to Defendant.
>
> 31. On information and belief, at the time Defendant began its Infringing Uses, and at all times thereafter, it was aware, or had reason to know,

> of AAA's rights in the AAA Marks and knew that those trademarks are distinctive and have become famous and valuable.
>
> 32. Defendant's Infringing Uses lessen the capacity of the AAA Marks to identify and distinguish the produces and services provided or endorsed by, or affiliated with, AAA under the AAA Marks and, thus, dilute the distinctive quality of the AAA Marks and damage the reputation, recognition, and goodwill consumer's associate with AAA's products and services.

*Id.* at ¶¶ 29-32.

Plaintiff seeks injunctive relief and monetary damages. *See* Compl. at pp. 14-16.

### III. LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As stated by the Supreme Court,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of

'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527.

## IV.  ANALYSIS

### A.  Defendant's Position

Defendant argues that each count in Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6). Defendant's principal argument is that each count fails to state a claim upon which relief can be granted because, although Plaintiff states in its Complaint that "AAA has registered with the United States Patent and Trademark Office more than 70 of its AAA Marks," Compl. at ¶ 18, it does not "identify which *particular* mark of the 'AAA Marks,' serves as a basis for each count of the Complaint" (emphasis added). In other words, Defendant claims that it is unclear from the Complaint which of the "more than 70 . . . AAA Marks" are "actually be asserted against the Defendant in this action." Defendant contends that all six counts contained in Plaintiff's Complaint should be dismissed on this basis.

Defendant also advances three additional arguments, one relating specifically to Count II and two relating specifically to Count VI. With respect to Count II, Defendant contends that Plaintiff's federal unfair competition claim fails to state a claim upon which relief can be granted because Plaintiff has not alleged, as it must, that "the false designation [has] a substantial economic effect

on interstate commerce." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).  According to Defendant, "Plaintiff does not allege *any* effect, substantial or otherwise, that Defendant's alleged false designation of origin has resulted in an effect on interstate commerce" (emphasis added).

Additionally, Defendant argues that Count VI, Plaintiff's unfair competition claim under the Michigan Consumer Protection Act ("MCPA"), is barred by a statutory provision that provides an exemption for regulated conduct or transactions.  *See* Mich. Comp. Laws § 445.904(1)(a) (stating that the MCPA does not apply to any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States").  Defendant also contends, for the first time in its reply brief, that Count VI should be dismissed because the MCPA does not regulate the conduct complained of in this case.[2]

### B. Discussion

Defendant's three arguments are addressed, in turn, below.

#### 1. Defendant's First Argument

First, Defendant argues that it is unclear which particular mark serves as the basis for each count of the Complaint.  As Defendant correctly points out, each cause of action asserted by Plaintiff in this case requires an allegation that a particular mark has been infringed.  For example, Plaintiff's federal trademark infringement claim (Count I) is governed by 15 U.S.C. § 1114(1), which states that trademark infringement occurs if a person, acting without the permission of a trademark's owner, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of *a*

---

[2] The Court will not address this argument because it was raised for the first time in Defendant's reply brief.  *See, e.g., United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("[w]e will generally not hear issues raised for the first time in a reply brief").

*registered mark* in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" (emphasis added). In order to demonstrate that confusion is likely, courts in this circuit consider eight factors: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines. *See Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). Defendant argues that while Plaintiff alleges that it has over 70 registered marks and that eight such marks are "particularly relevant to this action," it does not allege that any of these marks are infringed or that any of them serve as the basis underlying the counts contained in the Complaint. As such, Defendant contends that the Court will be unable to perform the eight-factor "likelihood of confusion" test as to factors (1) and (3), above, because these factors require an examination of the particular mark allegedly infringed, which, again, Defendant contends is not stated in the Complaint.

In its Complaint, Plaintiff states that "[t]his action arises out of Defendant's knowing and willful violation of Plaintiff's rights in its famous and distinctive AAA trademarks ('AAA Marks')." Compl. at ¶ 2. Later in the Complaint, Plaintiff states that eight such marks are "particularly relevant to this action" and lists them in the chart contained in paragraph 18 of the Complaint. *Id*. at ¶ 18. Plaintiff then "repeats and realleges the[se] allegations" in each count of the Complaint. Based on these averments, and having closely examined the Complaint in the aggregate, it is clear that (1) Plaintiff is alleging that the eight marks contained in the chart have been infringed and (2) it is these marks that are being asserted in this case, providing the basis for the claims contained in

the Complaint.  Although Defendant could have pled its case more clearly, the Court finds that the Complaint survives the plausibility standard of *Twombly* and *Iqbal*, discussed in Section III.

### 2.  Defendant's Second Argument

Defendant's second argument is directed at Count II only.  Defendant contends that Plaintiff's federal unfair competition claim fails to state a claim upon which relief can be granted because Plaintiff has not alleged, as it must under *Johnson*, quoted above, that the false designation has a substantial economic effect on interstate commerce.

The plaintiff in *Johnson*, an architect licensed to practice in three states including Michigan, brought suit against another architect and others alleging that his architectural plans and drawings were altered and used without his permission in violation of 15 U.S.C. § 1125(a).  *See* 149 F.3d at 496.  The plans and drawings at issue concerned the construction of a house located in Michigan. *See id.* at 497.  One of the defendants argued that the plaintiff failed to satisfy the "substantial economic effect on interstate commerce" requirement because "the . . . house is located in Michigan" and is "bought and sold only in Michigan . . . and, therefore, a false designation as to the designing architect cannot affect interstate commerce."  *Id*. at 502.  The Sixth Circuit rejected this argument, stating that the defendant "fundamentally misperceive[d] the nature of th[e] case."  *Id*. The court explained that "the house is only part of the 'goods or services' at issue" and that "[the parties'] *services as architects* are the more relevant 'goods or services.'"  *Id*. (emphasis added). Because the plaintiff was licensed to practice, and actually did practice, in three separate states, the court determined that the "substantial economic effect on interstate commerce" requirement was satisfied, holding that if a defendant's "false designation hinders [the plaintiff's] ability to conduct his interstate . . . business, it affects interstate commerce."  *Id*.

9

Applying *Johnson* to the present case, it is clear that Plaintiff has sufficiently alleged a "substantial economic effect on interstate commerce." In its Complaint, Plaintiff states that it "provides its over 50 million members with products and services throughout the United States," Compl. at ¶ 6, that it "use[s] [its] Marks . . . in interstate commerce to identify a wide range of products and services," *id*. at ¶ 15, that its "trademarks have acquired substantial value and fame in the United States and in other countries," *see id.* at ¶ 16, and that "Defendant has . . . profited from [the] unauthorized use of the AAA Marks . . . to the detriment of AAA and its customers." *See id.* at ¶ 5. Boiled down, then, Plaintiff alleges that its "ability to conduct [its] interstate . . . business" has been hindered. *See Johnson*, 149 F.3d at 502. Accordingly, Plaintiff has sufficiently alleged a "substantial economic effect on interstate commerce" and Defendant's second argument is therefore unpersuasive.

### 3. Defendant's Third Argument

Defendant's third argument is directed at Count VI only. Defendant argues that Plaintiff's state law claim for unfair competition under the MCPA should be dismissed pursuant to Mich. Comp. Laws § 445.904(1)(a). Defendant relies solely upon *Smith v. Globe Life Ins. Co.*, 460 Mich. 446 (1999), discussed below, in support of its argument.

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903. Under Mich. Comp. Laws § 445.904(1)(a), the exemption on which Defendant relies in this case, the MCPA "does not apply to . . . [a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." As stated by the Michigan Supreme Court, "the relevant inquiry is not whether the *specific* misconduct alleged by

10

the plaintiffs is 'specifically authorized.' Rather, it is whether the *general* transaction is specifically authorized by law." *Smith*, 460 Mich. at 465 (emphasis added). For example, in *Smith*, a case involving allegedly fraudulent insurance practices in connection with the sale of a credit life insurance policy, the Court determined that the relevant "transaction or conduct" (i.e., the "general transaction") was the sale of credit life insurance and not the *fraudulent* sale of credit life insurance (i.e., the "specific transaction"). *See id.* at 465-466.

Defendant argues that § 445.904(1)(a) applies in the present case because its business is regulated by the Office of Financial and Insurance Regulation and the Michigan Department of Energy, Labor & Economic Growth. As stated by Defendant,

> Plaintiff's allegations arise out of Defendant's sale of automobile insurance and warranties. In Michigan the sale of automobile insurance is regulated by The Office of Financial and Insurance Regulation . . . . In regards to warranties, the Michigan Department of Energy, Labor & Economic Growth regulates the warrantors of aftermarket vehicle protection devices, systems and services sold in Michigan. Therefore, Defendant's alleged activates [sic] are exempt from liability under the MCPA.

(certain citations omitted).

This argument is clearly without merit. As Plaintiff correctly notes, the allegations in this case do not "arise out of Defendant's sale of automobile insurance and warranties," as Defendant argues. In fact, the nature of Defendant's business is irrelevant. What is relevant is Defendant's registration of business and domain names. Put differently, while the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board," the relevant "transaction or conduct" in this case is the registration of business and domain names, not

the sale of insurance and warranties.[3] By contrast, the relevant "transaction and conduct" in *Smith*, the sole case on which Defendant relies, was the sale of a credit life insurance policy, which is a practice that is "specifically authorized under laws administered by a regulatory board." Therefore, Defendant's argument that § 445.904(1)(a) is relevant here simply because its business—the sale of car insurance and warranties—is regulated by the state is inconsistent with the plain language of the exemption and must be rejected.

### V.  PLAINTIFF'S REQUEST FOR AN ORDER UNDER RULE 11(c)(3)

Plaintiff argues that the filing of Defendant's motion constitutes a violation of Rule 11(b)[4]

---

[3] As Plaintiff notes, the registration of business names is governed by Michigan's Business Corporation Act, which states, in relevant part, that a corporate name "[s]hall not contain a word or phrase, an abbreviation, or derivative of a word or phrase, the use of which is prohibited or restricted by any other statute of this state, unless in compliance with that restriction." Mich. Comp. Laws § 450.1212(1)(c). The Act also provides that "[t]he fact that a corporate name complies with this section does not create substantive rights to the use of that corporate name." *Id.* at § 450.1212(3).

These provisions demonstrate that the Michigan legislature intended to link the conduct in this case—the registration of business names—to other laws, such as the MCPA. Therefore, Plaintiff is correct that "[t]he MCPA's prohibition on '[u]nfair, unconscionable, or deceptive methods, acts, of practices in the conduct of trade or commerce' . . . restricts the [Business Corporation Act's] naming provision" and, accordingly, "Michigan . . . law does not . . . authorize Defendant's [alleged] use of infringing or confusingly similar AAA-related business names."

[4] Rule 11(b) reads as follows:

> **(b) Representations to the Court**. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by

12

and that the Court should issue an order under Rule 11(c)(3)[5] requiring Defendant to show cause why it has not violated Rule 11. The Court will decline to issue such an order because the arguments advanced by Defendant in its motion, although "wobbly," are not clearly frivolous, and the Court will decline to find a Rule 11 violation.

### VI. ORDER

For the reasons stated above,

IT IS ORDERED that Count V of the Complaint is dismissed.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss [docket entry 14] is denied.

IT IS FURTHER ORDERED that Plaintiff's request for an order under Fed. R. Civ. P. 11(c)(3) is denied.

                                              S/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated: November 16, 2009

---

        existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

        (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

        (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

[5] Rule 11(c)(3) reads as follows: "On its own, the court may order an attorney, law firm, or party to show cause why conduct . . . has not violated Rule 11(b)."

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 16, 2009.

S/Denise Goodine
Case Manager